98 So.2d 429

**DEATON TRUCK LINE, Inc.,**

v.

**Evelyn ACKER.**

6 Div. 965.

Supreme Court of Alabama.

Nov. 14, 1957.

612

614

Lipscomb, Brobston, Jones & Brobston, and W. E. Brobston, Bessemer, for appellee.

London & Yancey, Geo. W. Yancey, and Jas. E. Clark, Birmingham, for appellant.

LAWSON, Justice.

Mrs. Evelyn Acker, the widow of Emory O. Acker, instituted proceedings in the circuit court of Jefferson County, Bessemer

Division, under the Alabama Workmen's Compensation Law to obtain compensation for herself and for her minor children.— Chapter 5, Title 26, Code 1940. The trial court awarded compensation. Certiorari was granted by this court on petition of the defendant, Deaton Truck Line, Inc., to review the judgment awarding compensation. We reversed and the cause was remanded for further proceedings. Deaton Truck Line, Inc., v. Acker, 261 Ala. 468, 74 So.2d 717.

After remandment the cause was tried the second time and some testimony was adduced which was not presented on the first trial. Again the trial court rendered a judgment wherein compensation was awarded. On petition of Deaton Truck Line, Inc., we granted certiorari to review the judgment of the trial court rendered after remandment.

On June 24, 1949, Emory O. Acker entered into a written agreement with Deaton Truck Line, Inc., a corporation, referred to hereafter as Deaton, wherein Acker as owner leased or rented to Deaton a truck-tractor and a trailer which, when operated together, were capable of hauling freight. We will refer hereafter to Acker's equipment simply as a truck. Deaton was engaged in the business of hauling freight as a common carrier, both intrastate and interstate.

The written agreement, which will be set out in full in the report of the case, provided in part that Acker was to keep the truck in good mechanical condition and repair at his own expense for the duration of the lease and that Acker was to pay all costs of its operation, including gasoline, oil, tires, parts, repairs, driver's salary, etc.

Acker drove the truck when it was being used in hauling freight for Deaton. His last trip ended on the afternoon of Thursday, May 4, 1950, at which time he arrived at Deaton's terminal in Birmingham from New Orleans. He met his death three days later on Sunday, May 7, 1950. Just prior to his death Acker and a friend removed the gasoline tank from the truck and car-

ried the tank into Acker's kitchen, where Acker undertook to repair a leak in the tank. While Acker was so engaged an explosion occurred which resulted in his death. Acker's home was located in or near Bessemer, some ten or twelve miles from Deaton's terminal in Birmingham.

In order for an accident to be compensable under the Workmen's Compensation Law of this state it must arise out of and in the course of the employment. See Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666, for a discussion of those terms.

We reversed when the cause was first before this court because we concluded that Acker's death did not occur in the course of his employment by Deaton. We said in part as follows:

"Our interpretation of the written agreement here involved is that while the motor vehicle was out of service and being repaired, it was under the sole jurisdiction and control of Acker, whose duty it was to have it repaired at his own expense. He was privileged to select the place where, and the person by whom the repairs should be made.

"At the time Acker was killed, the motor vehicle was out of service and out of commission so far as the work of transportation was concerned and incapable of earning compensation for him under his contract of employment. Acker selected the place where the repairs were to be made, at his home, a place where Deaton had no connection and where the business of Deaton did not require the presence of Acker. He elected to make the repairs himself." 261 Ala. 472, 74 So.2d 721.

We also pointed out that Acker undertook to repair the leak in the gasoline tank without the knowledge of and not under the supervision, direction or control of Deaton.

On the second trial here under review the trial court found, as it did in effect on

the first trial, that at the time of the accident the truck was not being used in transporting freight for Deaton and that Acker selected the place where the repairs were to be made and "elected" to make the repairs himself. But there were additional findings made on the second trial based on testimony not presented on the first trial, under which findings the trial court felt constrained to come to a result different from that which this court reached on first review.

When reduced to their essence, the material "additional findings" are substantially as follows. Deaton had rules and regulations which affected Acker in the following respects. He "was not permitted to use his truck while in the service or out of the service of the employer [Deaton] for any purpose, either personal or business." He "was not permitted to operate such truck while in a dangerous or unsafe condition, even though such vehicle was not in use for transporting the employer's loads." He "was required to make, or have made repairs in emergencies without operating the vehicle if it became dangerous to operate the same and this applied whether the vehicle was actually hauling freight for the defendant or not." Acker was expected to attend safety meetings held each Monday morning at Deaton's office.

The court made these other additional findings of fact. "The Court further finds from the evidence that the leak in the tank of the vehicle involved was discovered by plaintiff's intestate upon the Sunday of his death, after he had received orders from his employer to begin a trip with said vehicle at 4 A.M. the following Monday morning; and that in repairing the gas tank from said truck at the time and place of the accident he was following the rules and regulations of his employer * * *. And the Court further finds that for him to have driven the truck with a leaky tank would have been dangerous and in violation of the employer's rules. The Court further finds that in repairing the gas tank from said truck at the time and place of the accident he was following the rules and

regulations of his employer, the defendant * * *."

As is required of us, we have reviewed the case anew on this review.—§ 28, Title 13, Code 1940; Wilkey v. State ex rel. Smith, 244 Ala. 568, 14 So.2d 536, 151 A.L.R. 765; Lattimer v. Stratford, 259 Ala. 405, 66 So.2d 720. We reaffirm our holding in Deaton Truck Line, Inc. v. Acker, supra, based on the facts there presented.

The so-called "additional findings" have been given our careful and studied consideration, and we are clearly of the opinion that those findings do not justify a result different from that reached on first review.

A careful reading of the entire judgment here under review indicates to us that the trial court concluded that the existence of the rules and regulations to which reference has been made gave to Deaton jurisdiction and control over the truck and Acker at all times in such a way as to require a holding that Acker, while making repairs on the truck at all times and places and under all circumstances, was engaged in the course of his employment by Deaton. We cannot agree.

True, Deaton was interested in the proper maintenance of the leased truck in a safe and proper running condition in order to minimize as much as possible the likelihood of liability for damages occasioned while the truck was actually transporting goods for Deaton. But the written agreement which was under consideration on the first review imposed on Acker the obligation to keep the equipment in good mechanical condition and repair at his own expense for the duration of the lease. The so-called rules and regulations added nothing in that respect.

On the occasion that Acker met his death he was doing nothing more than performing his obligation under the written agreement to keep the leased equipment in good repair at his own expense. At that time he was not under the direction or control of Dea-

ton, which did not even have knowledge of his repair activities, nor was he subject to their supervision in the manner, place and time in which he made the repairs. He was free to accomplish his duty of properly maintaining the vehicle as he, in his sole discretion, deemed necessary subject only to the end result being satisfactory to Deaton.

We will not undertake to discuss the cases relied upon by counsel for appellee and referred to in the judgment of the learned trial court. Most of those cases were considered by Chief Justice LIVINGSTON in his dissent on first review.

We are of the opinion that Acker's death did not come in the course of his employment by Deaton. The judgment is reversed and the cause is remanded.

Reversed and remanded.

SIMPSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.

LIVINGSTON, C. J., dissents.